UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KENNETH HUTT,**

      **Plaintiff,** :

  v.                               **Case No. 2:20-cv-1108**
                                     **Judge Sarah D. Morrison**
                                     **Magistrate Judge Elizabeth A.**
**GREENIX PEST CONTROL,**            **Preston Deavers**
**LLC,** *et al.***,**                           :

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Mr. Hutt's Motion seeking Court-Supervised Notice to Potential Plaintiffs Pursuant to 29 U.S.C. § 216(b). (ECF No. 75.) After Mr. Hutt's Motion was fully briefed, on May 19, 2023, the Sixth Circuit Court of Appeals issued a decision in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023) that changed the test for determining whether to issue Court-approved notice to potential plaintiffs in an action brought under § 216(b) of the FLSA. In response to the Court's Order, the parties filed supplemental briefing addressing the new *Clark* standard and the instant Motion. (ECF Nos. 129, 130.) For the reasons below, the Motion is **DENIED**.

    **I.**     **BACKGROUND**

Mr. Hutt seeks to send notice of this case to a class of all Pest Control

Technicians[1] employed by Defendant Greenix Holdings LLC at four facilities in Ohio from February 28, 2017 to the present. (ECF No. 75.)

In support of his Motion, Mr. Hutt relies on the allegations in his Complaint (which is unverified), Defendant's Employee Handbook (which he does not submit to the Court), and his own declaration. (*See*, *generally*, ECF Nos. 75, 80.)

According to his declaration, Mr. Hutt worked for Defendant for about eight months in 2019. (ECF No. 80, ¶ 2.) His duties as a Pest Control Technician included:

> among other tasks, procuring chemicals needed for the day and water to dilute them; making daily calls in the evening to eight to twelve customers to inform them of the estimated arrival time; entering information on two apps during the workday, cleaning and washing their company vehicle, performing pest control services to customers, sales of contracts for services to customers, driving to corporate offices when needed, attending meetings, and driving to work assignments.

(*Id.* ¶ 7.)

Mr. Hutt declares that he was paid on a flat rate basis per job that varied based on the services performed. (*Id.* ¶ 8.) He says that he was not paid for certain travel time and was not paid overtime when he worked over forty hours. (*Id.* ¶ 9.) As for his overtime allegations, he asserts:

> Greenix requires the Technicians to clock-in when they reach their first job and clock out when they leave the last job site. The Pest Technicians worked many off-the-clock hours each day. The Technicians are required to prepare for the service calls either at their home or the Greenix facility by loading the proper chemicals for that day's job assignments and filling up water tanks to an appropriate level. The Technicians must call scheduled customers the night before service to advise of their estimated time of arrival. The company vehicle must be kept clean daily

---

[1] According to Defendant, the position title is "Service Pro." (ECF No. 94.)

inside and out. The Technicians must wash their uniform. There are additional preliminary and post job tasks that need to be completed, ta[s]ks which are necessary to complete the service calls.

(*Id.* ¶ 11.)

Mr. Hutt asserts that he has personal knowledge that other Pest Control Technicians regularly work more than forty hours per week without payment of overtime compensation and must perform many hours of off-the-clock duties. (*Id.* ¶ 9.) He bases his knowledge on the company-wide compensation plan and discussions with co-workers. (*Id.*)

## II.   ANALYSIS

The FLSA mandates that employers pay a federal minimum wage and overtime to certain employees. 29 U.S.C. §§ 206(a), 207(a). Employees can sue for alleged violations of those mandates on "behalf of . . . themselves and other employees similarly situated." *Id.* § 216(b). But "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

Although the FLSA authorizes employees to proceed collectively, it does not prescribe all the procedures for doing so. Thus, courts must exercise discretion in implementing procedures for collective litigation:

> Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. . . . It follows that, once [a collective] action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper

way.

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989) (citations omitted).

### A. To proceed collectively, Mr. Hutt must show a "strong likelihood" other employees are similarly situated.

Until recently, district courts within the Sixth Circuit have employed a "two-step certification" process in FLSA collective actions. *See Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (Marbley, J.). The first step of that process occurred early in litigation (usually before discovery was completed) and required that named plaintiffs make a "modest factual showing" that they are "similarly situated" to a proposed class of potential opt-in plaintiffs. *Id.* (quoting *Comer v. Walmart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)). If the named plaintiffs met their modest burden, the proposed class was "conditionally certified," and plaintiffs could send court-supervised notice to potential opt-ins. *Id.* The second step occurred after the close of discovery and warranted a closer examination of whether the named plaintiffs were "in fact, similarly situated" to plaintiffs who opted into the collective action. *Comer*, 454 F.3d at 547.

But the Sixth Circuit established a new standard for determining when to issue notice to potential class members.[2] In *Clark*, the Appellate Court rejected the

---

[2]The Sixth Circuit also rejected the use of the term "certification" in the context of FLSA collective actions: "unlike a Rule 23 class action, an FLSA collective action is not representative—meaning that 'all plaintiffs in an FLSA action must affirmatively choose to become parties by opting into the collective action.'" *Clark*, at 1009 (citing *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 402 (6th Cir. 2021) (cleaned up)).

4

"modest factual showing" standard in favor of the "strong-likelihood standard" used in preliminary injunction motions: "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." 68 F.4th at 1011. This standard "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id*.

If the plaintiffs meet their burden, the District Court will permit them to send court-supervised notice to other employees advising the others of their rights to opt-in to the litigation. *Id*. A court's decision to allow notice to other employees is provisional—it "has zero effect on the character of the underlying suit." *Id*. at 1009 (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).

Step two of the collective determination is relatively unchanged by *Clark*. Step two occurs after the close of discovery and requires that the Court conclusively determine whether the named plaintiffs are "in fact similarly situated" to opt-in plaintiffs. *See id*. at 1009–10. Only then do the opt-ins become parties to the suit and proceed to trial collectively with the named plaintiffs. *Id*. at 1009 (citing 29 U.S.C. § 216(b) and *Canaday*, 9 F.4th at 403). To succeed at step two, plaintiffs must show that they are similarly situated by a preponderance of the evidence. *See, e.g., id*. at 1010.

### B. Multiple factors guide the Court's determination of similarly situatedness.

Plaintiffs are similarly situated "when they suffer from a single, FLSA–violating policy, and when proof of that policy or of conduct in conformity with that

5

policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). But employees can be "similarly situated" under the FLSA even if proof of a violation of one plaintiff's rights does not necessarily prove a violation of other's rights. *Id*. That is, plaintiffs are similarly situated if their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id*. Plaintiffs are required to show that their position is "similar, not identical" to the position of plaintiffs who opt into their collective action. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (Marbley, J.). (citations omitted). Similarly situated opt-ins "are those whose causes of action accrued in approximately the same manner as those of the named plaintiff." *Id*.

Multiple factors guide the Court's determination of similarly situatedness, including whether opt-in plaintiffs "performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the [named] plaintiffs were." *Clark*, 68 F.4th at 1010 (citing *Pierce v. Wyndham Resorts, Inc.*, 922 F.3d 741, 745–46 (6th Cir. 2019)). Whether plaintiffs are subject to different individualized defenses is a factor. *Pierce*, 922 F.3d at 745 (citing *O'Brien*, at 584); *see also Monroe v. FTS USA, LLC*, 860 F.3d 389, 404 (6th Cir. 2017) ("Several circuits, including our own, hold that individualized defenses alone do not warrant decertification where sufficient common issues or job traits otherwise permit collective litigation."). Courts have also considered whether affidavits of potential

6

plaintiffs were submitted and whether there is evidence of a "widespread" discriminatory plan by a defendant. *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015). No single factor is determinative; instead:

> The very point of the "similarly situated" inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."

*Clark*, 68 F.4th at 1012 (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

### C. Mr. Hutt has not shown that there is a strong likelihood that other employees are similarly situated to him.

The only evidence that Mr. Hutt submits in support of his Motion is his own declaration—in which he makes clear that his knowledge is based on hearsay; what Mr. Hutt knows about how other employees are paid is based "on the company wide compensation plan and discussions with co-workers." (ECF No. 80, ¶ 9.) Testimony about what happened to other employees based on hearsay cannot demonstrate that other potential class members were similarly situated. *See Landsberg v. Acton Enters., Inc.*, No. C2-05-500, 2006 WL 3742221, at *4 (S.D. Ohio Dec. 15, 2006) (two affidavits based on hearsay provide no "colorable basis" for issuing notice to other employees); *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 866 (S.D. Ohio 2005) (Holschuh, J.) ("[H]earsay statements cannot be considered in connection with a Plaintiff's § 216(b) motion for the purpose of determining whether other employees are similarly situated").

Mr. Hutt has failed to provide the Court with Defendant's company-wide compensation plan. Nevertheless, the mere fact that a company has a company-

7

wide compensation plan is not necessarily evidence of company-wide FLSA violations. A plaintiff must submit evidence that he was treated similarly to other employees—i.e., that he was not the subject of human error or a rogue manager, but that his FLSA injury resulted from a corporate-wide decision to refuse to pay overtime.

Mr. Hutt has failed to establish a strong likelihood that there is a class of potential plaintiff employees similarly situated to him.

### III. CONCLUSION

Mr. Hutt's Motion seeking Court-Supervised Notice to Potential Plaintiffs Pursuant to 29 U.S.C. § 216(b) (ECF No. 75) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**